ESTATE OF ROBERT LYONS HAGUE, CITY BANK FARMERS TRUST COMPANY AND WALTER E. GODFREY, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARY LEWIS HAGUE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 103352, 103355. Promulgated September 12, 1941.

*Fred B. Angevine, Esq., Richard O. Merrick, Esq., Aaron H. Marx, Esq.,* and *Joseph B. Uniacke, Esq.,* for the petitioners.
*Allen T. Akin, Esq.,* for the respondent.

**OPINION.**

TURNER: Respondent's determination that Hague received taxable income in the amount of $343,192.61 not reported by him in his return was based on the discovery of large deposits in his bank accounts from unexplained sources. One argument by counsel for the estate seems to be that under the circumstances here, Hague now being dead, the respondent was not justified and had no authority to determine income on the basis of bank deposits and that his determination of the deficiency herein is entitled therefore to no presumption of correctness. There is ample authority for the respondent's action in using Hague's deposits as a starting point in determining his income. *Axel Holmstrom*, 35 B. T. A. 1092; *Leonard B. Willits*, 36 B. T. A. 294; *Joseph Calafato*, 42 B. T. A. 881; *Russell C. Mauch*, 35 B. T. A. 617; affd., 113 Fed. (2d) 555; and *Hoefle* v. *Commissioner*, 114 Fed. (2d) 713. Those cases hold that deficiencies determined by the respondent on the basis of such information are prima facie correct and that the burden is on the taxpayers to show that they are wrong. By design the statute contemplates the keeping by a taxpayer of accounts and records from which his correct income can be determined,

and in the absence of such books of account the respondent must determine or verify his income from the records or sources that are available. In the instant case Hague kept no books of account and the respondent has used as the starting point for his determination the only records kept by Hague from which information could be had, namely, his check stubs, canceled checks, and bank statements. The record also indicates that the respondent has made reasonable efforts to verify his conclusions from outside sources. The fact that Hague is now dead does not change the situation; it does not detract from or add to the respondent's powers and duties; neither does it change the force and effect of his determination.

Counsel for the estate also argue that, except for some minor items not here in issue, Hague had no income over and above that reported by him on the joint return and that the deposits on which the respondent based his determination resulted from redeposits, loans, and the "kiting of checks." It is argued that such a conclusion is borne out by the fact that Hague was shown to be eccentric with respect to money items, that he withdrew and carried substantial sums of money on his person, and that these amounts were frequently redeposited in his bank accounts; that the respondent has failed to show or indicate the source or sources of such additional income; and, further, that there is no showing of any accumulation of wealth.

The accumulation of wealth during the taxable year, like the possession and use of unexplained cash, is merely evidential, and, where a taxpayer fails to keep proper books of account and is unable to explain the source of accumulated property, such accumulations may be the basis for the determination of income, but the failure to accumulate wealth during the taxable year does not negative the realization or receipt of income, particularly where it is shown as in this case that a taxpayer has expended large sums of money during the taxable year for personal uses and there is a failure on his part to show that the amounts so expended were of a character other than income earned or realized during the year.

In the instant case the facts show that Hague received during 1936 sums of money far in excess of his salary. They further show that some of the amounts so received were not income to him, but, after the sums so identified plus Hague's salary and other small items reported in the joint return have been eliminated, only approximately one-half of the amounts deposited by Hague during the year have been accounted for or explained. During 1936 Hague deposited or caused to be deposited in his accounts at the National City Bank and the Chase National Bank a total of $529,880.45. Of the amounts so deposited, the record shows that $39,391.92 represented salary, all of which was reported in the joint return; $1,035.94 represented a loan from the New

England Mutual Life Insurance Co.; $9,510.70 represented proceeds from the sale of stock; $32,750 represented checks drawn in favor of Hague by Mary Lewis Hague on her account at the Guaranty Trust Co.; $39,000 represented checks similarly drawn in favor of Hague by his brother, Cuthbert Hague, on his account at the Corn Exchange Bank; $60,000 represented amounts received from the Standard Oil Co. and was described on its books as "Strike Expense"; $66,877.41 represented the proceeds of loans to Hague by the National City Bank less discounts; and $7,500 represented an advance on traveling expenses by the Standard Oil Co. to Hague on May 1, 1936. On brief respondent concedes that of the total deposits, $49,023.37 classified as income reported on the joint return, $67,913.35 as amounts received from loans, and $60,000 as "strike expenses" received from the Standard Oil Co. should be eliminated from income in computing the deficiency herein. The $67,913.35 described as loans and the $60,000 described as "Strike Expense" received from the Standard Oil Co. are verified as to character and amount by the facts of record, while of the $49,023.37 classified as income reported on the joint return we have been able to identify among the deposits only $39,391.92 representing salary and possibly $2,700.25 representing gain from the sale of stock. The respondent, however, has apparently satisfied himself as to the correctness of the amounts so conceded and the three items in question will be excluded from income in the amounts stated. In addition to these items there should also be excluded $32,750 covered by the checks from Mary Lewis Hague, $39,000 covered by the checks from Cuthbert Hague, $7,500 representing traveling expenses advanced by the Standard Oil Co., and $6,810.45 of the proceeds from the sale of Standard Oil Co. stock. With respect to the item last mentioned, it is to be noted that the total proceeds from the sale of such stock deposited by Hague in his account at the National City Bank was $9,510.70. In his return, however, he reported $2,700.25 as gain from the sale of stock, and, inasmuch as we find no other indication of a sale of stock by Hague during the taxable year, we assume that the gain so reported represented a portion of the total proceeds of $9,510.70, leaving only $6,810.45 not excluded elsewhere. After the exclusion of the items set forth in the preceding paragraph, there remains as unidentified and unexplained bank deposits a total amount of $266,883.28.

The possession of unexplained or unidentified sums of money by an individual does not, of course, establish affirmatively or conclusively that those sums represent income. It could be possible that such sums represented loans, gifts, property or money held in a fiduciary capacity, or money or the proceeds of property acquired in prior years. In the instant case, however, there is no claim, and if there had been there is nothing in the record to substantiate a claim, that the unexplained

deposits represented gifts, property or money held in trust, or money or the proceeds of property acquired in prior years, and, with respect to borrowings as a possible source of money on hand, it is to be noted that we have previously excluded all amounts shown to have been deposited in Hague's accounts as the result of loans and the same is true of amounts received for the use of the Standard Oil Co. The record also fails to substantiate the contention that the cash deposits represented the redeposit of amounts previously withdrawn. $309,450.23 of the checks drawn and the charges made against the accounts were in favor of payees other than Hague, and there is certainly no basis for saying that any part of those withdrawals was redeposited. The cash withdrawals amounted to $213,424.69, some $42,000 less than the total cash deposits of $255,730. Furthermore, comparison of the dates and amounts of cash withdrawals, the dates and amounts of cash deposits, and regard for other facts concerning Hague's cash disbursements negative any claim that the cash withdrawn from the two accounts was redeposited in any appreciable amount. The record contains testimony to the effect that Hague paid many of his obligations in cash, including such items as his butler's salary and from $2,000 to $4,000 from time to time toward apartment rent and hotel charges. The deposits made by him in the accounts of Mary Lewis Hague at the Guaranty Trust Co. and of Cuthbert Hague at the Corn Exchange Bank, totaling $74,737, to cover checks received from them were, in so far as this record shows, from the cash withdrawn from the two bank accounts or represented additional funds acquired by Hague during the year from other sources also unexplained. The same thing may be said with respect to his expenditure of most if not all of the $67,500 received by him from the Standard Oil Co. as advance traveling expenses and "Strike Expense." Clearly the theory that the unexplained deposits may be classified as redeposits is not supported by the record.

Not only do we have no explanation of the source and character of $266,883.28 of the total deposits nor any showing that the said moneys were not income, but, to the contrary and in addition to the fact that Hague did receive and disburse the amounts in question, the record does show that amounts far in excess of his salary and the amounts from other known sources were used by him as his own and for his personal enjoyment, use, and benefit. We know, for instance, that he made substantial cash payments on his obligations; that he made personal loans which totaled an amount not far below his salary for the year; and that, in addition to the amounts paid in cash to the hotel in which his apartment was located, he made further disbursements by checks to the extent of some nineteen thousand dollars. These sums were in addition to the household expense allow-

ance of $12,000 to his wife, Mary Lewis Hague. The facts of record further indicate that some twenty-five to thirty thousand dollars were expended for the support, maintenance or benefit of various individuals, including his mother, a divorced wife, and other relatives. We also know that he expended some twenty thousand dollars to cover insurance premiums. There were further disbursements, amounting to several thousand dollars, to his personal attorney, physicians, dentists and opticians. Substantial sums were also disbursed for telephone and telegraph, flowers, automobiles, food, clubs, entertaining, gifts, and liquor. Check stubs covering numerous disbursements carry no explanation, and we are not otherwise advised as to their purpose. Some of the items described may have been, and probably were, for the benefit and use of the Standard Oil Co., but the record here is not susceptible of any conclusion that the disbursements made by Hague for his own personal pleasure, use, and benefit were less in amount than the unexplained receipts. *Taylor* v. *Helvering*, 293 U. S. 507, cited and relied on by counsel for the Hague estate, is accordingly not in point, and, to the extent of the amounts received by Hague during the year 1936 and not shown herein or conceded by the respondent to have been other than income, the respondent's determination is sustained.

The final issue has to do with the liability of petitioner Mary Lewis Hague. The respondent contends that inasmuch as a joint return was filed the liability thereunder is joint and several and that the deficiency should be determined against her in the same manner as it is determined against the estate of Robert Lyons Hague. The return was executed by Robert L. Hague, and Mary Lewis Hague took no part in its preparation except to furnish information in respect of her income and expenses. The record discloses that none of the amounts herein involved belonged to Mary Lewis Hague and that she had no ownership or interest in the bank accounts of Robert Lyons Hague, which formed the basis for the respondent's determination. None of the amounts in question was income to her and as to her there is no deficiency. *Commissioner* v. *Rabenold*, 108 Fed. (2d) 639; *Cole* v. *Commissioner*, 81 Fed. (2d) 485; and *Crowe* v. *Commissioner*, 86 Fed. (2d) 796. For a contrary view, see *Moore* v. *United States* (Ct. Cls.), 37 Fed. Supp. 136.

*Decision will be entered under Docket No. 103352 under Rule 50. Decision will be entered under Docket No. 103355 for the petitioner.*