Estate of Frank Scotto, Theresa Scotto, Executrix v. Commissioner.
Estate of Frank Scotto v. Commissioner
Docket Nos. 19744, 19745.
United States Tax Court
1950 Tax Ct. Memo LEXIS 56; 9 T.C.M. (CCH) 953; T.C.M. (RIA) 50255; October 31, 1950
Frank T. Kleiger, Esq., 217 Broadway, New York 7, N. Y., for the petitioner. John J. Madden, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: These consolidated proceedings involve deficiencies in income tax of Frank Scotto, deceased, for the calendar year 1944 and the taxable fractional year ended June 10, 1945, in the respective amounts of $1,703.02 and $2,439.68. The sole issue presented by both cases is whether the Commissioner erred in adding to the net income of the decedent the amounts of $6,051.43 and $9,716.12 for the years 1944 and 1945, respectively, based on his determination that such amounts representing decedent's deposits in a bank account and a safety box constituted additional *57 unreported income. Findings of Fact Theresa Scotto, hereinafter referred to as the petitioner, resides in Brooklyn, New York, and is the duly appointed and acting executrix of the estate of Frank Scotto, who died testate on June 10, 1945. The decedent was in the Brooklyn Hospital for a serious illness during the periods January 6, 1945 to February 7, 1945 and from June 7, 1945 until his death. The decedent's income tax returns, which were filed with the collector of internal revenue for the first district of New York, reported adjusted gross income in the amounts of $3,000 for the year 1944 and $1,500 for the fractional year ended June 10, 1945. During the periods involved herein, petitioner was the wife of decedent and owner of 98 per cent of the stock and president of T. Scotto Liquor Store, Inc., which was engaged in the business of retail sales of bottled liquor, in Brooklyn, New York. The decedent's daughter was secretary of the corporation and decedent was not an officer thereof. The decedent, his wife, and their daughter were employees of the corporation and all three regularly worked in the store making cash sales and operating the cash register. Decedent was general *58 manager of the corporation and in that capacity received a salary in an undisclosed amount. As general manager decedent made purchases of merchandise and he alone balanced the cash register at the end of each business day and made all bank deposits once or twice a week. The decedent had no other employment. During the decedent's lifetime he made deposits in his personal bank account in the National City Bank of New York in various amounts totaling $6,131.23 during the period from December 5 to December 29, 1944, and $1,016.72 during the period January 2 to February 24, 1945. The withdrawals made by him amounted to $545.15 during the latter period. During the period from September 22, 1941 to the date of his death, decedent rented in his own name a safe deposit box in the Chemical Safe Deposit Company and upon opening that box after decedent's death, the petitioner found therein $8,700 cash. On May 16, 1944, Theresa Scotto as president of T. Scotto Liquor Store, Inc. drew that company's check for $2,800 on the Corn Exchange Bank Trust Company payable to cash and gave it to her husband, the decedent, because he needed money. The check was paid without endorsement by that bank the *59 same day. On January 5, 1942, the decedent and his wife signed a promissory note for $1,000 payable to Anthony Lubrano. On August 9, 1944, the decedent and his wife signed a promissory note for $1,000 payable to Louis Granato. Those notes evidenced debts of the decedent individually, and his wife jointly signed the notes only because the decedent requested it. After the decedent's death those two notes were presented for payment and petitioner, as executrix of decedent's estate, paid them in full. In the same capacity petitioner also settled for $300 a claim by Anthony Lubrano for a $600 debt due from decedent, which was not evidenced by a note or other writing. After the decedent's death, revenue agents examined the books and records of T. Scotto Liquor Store, Inc. in connection with its income and excess profits tax returns for its fiscal years ended February 28, 1943, 1944, 1945, and 1946. The agents' reports as to those years showed various adjustments as to income and deductions including additions to income in the amounts of $25,166.80 for 1943, $3,393.99 for 1944, and $16,854.49 for 1945 as representing unreported sales. Also, subsequent to decedent's death the T. Scotto *60 Liquor Store, Inc. employed an accountant to make necessary adjustments in its books of account, as of that time, to reflect a reconciliation with the revenue agents' reports, particularly with reference to the additional income attributed to the corporation, and as a balancing entry the accountant set up an account receivable labeled "Frank Scotto, Loans Receivable" which included, inte ralia, the amounts of the above-mentioned unreported sales. Opinion The issue presented is whether the respondent erred in determining that decedent had additional unreported income in the amounts of $6,051.43 for 1944, consisting of bank deposits made in that year, and $9,716.12 for the fractional year ended June 10, 1945, consisting of bank deposits made in that year plus $8,700 discovered in decedent's safe deposit box after his death. Both parties cite, as the applicable statute, section 22 (a), Internal Revenue Code, [1] the broad scope of which embraces "gains or profits and income derived from any source whatever." *61 Briefly, respondent's position is that this Court should sustain his determination for each of the years in question because petitioner has failed to establish that the cash deposited in decedent's bank account and safety box was derived from a source other than gains, profits, or income within the meaning of section 22 (a). Petitioner contends that the record herein establishes that the source of the deposits was other than earings or profits taxable to the decedent. Petitioner points to the corporation's $2,800 check dated May 16, 1944, the $1,000 note to Lubrano dated January 5, 1942, the $1,000 note to Granto dated August 9, 1944, and Lubrano's claim for a $600 indebtedness after decedent's death as showing that decedent borrowed large sums of money. Further, petitioner introduced the revenue agents' reports and the testimony of the accountant employed to adjust the corporation's books for the purpose of showing the probable source of most of the funds in question. Petitioner contends that on the record herein this Court should find that the amounts added to decedent's income for each of the taxable years were not income, but instead consisted of the proceeds of various loans *62 to the decedent and of the corporation's funds to which decedent had no rightful claim when deposited in his personal bank account and safety box. In cases of this kind there is plenty of authority to justify action of the character taken by respondent. Thereafter the taxpayer has the burden of showing that respondent's determination was wrong. Estate of Robert Lyons Hague, 45 B.T.A. 104; affirmed, 132 Fed. (2d) 775; certiorari denied, 318 U.S. 787, and cases cited therein. To sustain that burden the petitioner has offered uncertain proof at best. The corporation's check and the notes signed by decedent and petitioner considerably antedated the initial bank deposit in December 1944 and the subsequent deposits made in January and February 1945. Nor is there any demonstrable relation between the amounts of the corporation's check and the notes, and the amounts of decedent's bank deposits. In other words, there is nothing in this record which would enable the Court to identify or otherwise tie in the claimed sources of the funds with the bank deposits other than by guess. The same is true of the cash found in the safe deposit box. Petitioner does *63 not show whether decedent received cash or checks, or some other consideration for his notes. Further, we find no convincing evidence that decedent was borrowing money from the corporation or that he placed any funds in his bank account or hoarded any cash in his safety deposit box which he did not regard as his own. The revenue agents' reports and the accountant's testimony evidence only acts done and conclusions reached by certain persons after the decedent's death with respect to the corporation's affairs during its fiscal years ended before and after decedent's death. On the basis of such evidence we may not assume that some portion of fairly large amounts of unreported income attributed to the corporation, found its way into decedent's bank account and safe deposit box as money borrowed by him from the corporation. The petitioner, president of the corporation and the wife of decedent at the time of his death, testified that she did not know the amount of salary paid the decedent as compensation for his services as manager of the corporation or whether he was privileged to take as much as he wanted as such compensation. While there is testimony that decedent had no other employment *64 than as manager of the liquor store, there is no testimony negativing other sources of income. Nor is there evidence upon which this Court could reasonably base a finding of fact as to when or from what source decedent received the funds in question, or, that he held them under circumstances other than as rightfully belonging to him. Further, on this record, we can do no more than speculate that the money deposited in the bank account was received by decedent at times other than at or about the time the deposits were made, or, that the money in the safe deposit box was received and placed there sometime prior to 1945. The issue herein presents a question of fact on which petitioner has failed to meet the burden of proof. Accordingly, the respondent's determination, which is prima facie correct, must be sustained. Cf. Estate of Robert Lyons Hague, supra.
Decision in both dockets will be entered for the respondent. Footnotes
1. SEC. 22. GROSS INCOME. (a) General Definition. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *↩