T.C. Memo. 1997-94


UNITED STATES TAX COURT


MAURZAL FRIAS AND TERESA FRIAS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4416-95.                Filed February 24, 1997.


Maurzal Frias and Teresa Frias, pro sese.

<u>Edith F. Moates</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined deficiencies in, additions to, and accuracy-related penalties on petitioners' Federal income taxes as follows:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Penalty Sec. 6662 |
|------|-----------|----------------------------------|-------------------|
| 1991 | $5,002 | --- | $1,000 |
| 1992 | 9,202 | $469 | 1,840 |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rules references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] the issues for decision are:

(1) Whether petitioners underreported their Schedule C gross receipts for the years 1991 and 1992 in the amounts of $9,733 and $16,403, respectively;

(2) whether petitioners are entitled to Schedule C deductions for car and truck expenses for the years 1991 and 1992 in amounts greater than those allowed by respondent; and

(3) whether petitioners are liable for accuracy-related penalties under section 6662(a) for negligence or disregard of rules or regulations.

## FINDINGS OF FACT

Petitioners, husband and wife, lived in Tulsa, Oklahoma, at the time the petition was filed in this case.

During 1991 and 1992,[2] Mr. Frias was self-employed primarily as a house painter. He also worked as a musician and magician. Petitioners reported their gross income and deductions on one Schedule C; they described their principal business as "Painting/Music". Petitioners were cash basis taxpayers. Petitioners' tax returns were prepared by Richard Gardner.

---

[1] On brief, petitioners have conceded the sec. 6651(a) issue.

[2] Unless otherwise indicated, all descriptions refer to the 1991 and 1992 tax years.

Petitioners maintained four bank accounts, two at the Bank of Oklahoma, one at the Bank of Tulsa, and one at Sooner Federal Savings and Loan.

During an audit of petitioners' 1991 and 1992 Federal individual income tax returns (tax returns), the revenue agent analyzed petitioners' bank deposits and determined that petitioners had underreported their gross income. Petitioners did not report any income from magic shows or band activities on their tax returns.

After the audit began, Mr. Gardner prepared detailed schedules of petitioners' bank deposits, including a calculation of "total income", for the 1991 and 1992 years. Cash withheld from deposits[3] was reflected on Mr. Gardner's schedules but was not included in the total deposits.

Petitioners maintained check registers. The deposits recorded in petitioners' check registers do not include cash withheld from the deposits. A summary of total deposits, as calculated by the IRS, Mr. Gardner, and petitioners, for 1991 follows:

|  | Respondent's Audit | Mr. Gardner | Petitioners' Check Registers |
|---|---|---|---|
| Bank of Oklahoma | $18,585 | $18,707 | $18,711 |
| Withheld cash | 2,320 | --- | --- |
| Bank of Tulsa | 33,226 | 34,956 | 35,097 |
| Withheld cash | 6,930 | --- | --- |
| Sooner Fed. S&L | 13,982 | 13,981 | 13,571 |
| Withheld cash | 1,416 | --- | --- |

---

[3] When petitioners deposited checks, they often withdrew cash, depositing less than the amount of the check.

| Bank of Oklahoma | 5 | --- | --- |
|---|---|---|---|
| Total | 76,464 | 67,644 | 67,379 |

Schedule C gross receipts reported on petitioners' 1991 tax return were $57,501. "Total Income", as recalculated by Mr. Gardner after the start of the audit, for 1991 was $64,281. Petitioners made cash deposits--not to be confused with withheld cash--during 1991 of $3,090. Mr. Gardner did not consider these cash deposits as part of petitioners' Schedule C gross receipts. Respondent determined that petitioners had underreported their gross receipts for 1991 by $9,733. (Respondent did not consider all deposits to be gross receipts; her revenue agent backed out loan proceeds, account transfers, and gifts.)

A summary of total deposits, as calculated by the IRS, Mr. Gardner, and petitioners, for 1992 follows:

|  | Respondent's Audit | Mr. Gardner | Petitioners' Check Registers |
|---|---|---|---|
| Bank of Oklahoma | $63 | $2,448 | $2,492 |
| Withheld cash | 520 | --- | --- |
| Bank of Tulsa | 68,398 | 68,348 | 48,886 |
| Withheld cash | 4,029 | --- | --- |
| Sooner Fed. S&L | 11,570 | 11,115 | 7,796 |
| Withheld cash | 935 | --- | --- |
| Total | 85,515 | 81,911 | 59,174 |

Schedule C gross receipts reported on petitioners' 1992 tax return were $61,553. "Total Income", as recalculated by Mr. Gardner after the start of the audit, for 1992 was $66,345. Petitioners made cash deposits during 1992 totaling $16,476. These cash deposits were not considered as part of petitioners' Schedule C gross receipts as recalculated by Mr. Gardner.

Respondent determined that petitioners had underreported their gross receipts for 1992 by $16,403. (Again, respondent did not consider all deposits to be gross receipts; her revenue agent backed out loan proceeds, account transfers, and gifts.)

Auto and Truck Expense

Petitioners had three vehicles that they used in conjunction with their business activities. Petitioners' 1991 Schedule C shows 28,966 business miles and 4,000 personal miles. Petitioners did not keep contemporaneous logs of business miles driven; the mileage numbers on their tax returns were estimates.

At the time of the audit, petitioners reconstructed their business mileage for 1991. Respondent accepted petitioners' reconstruction and allowed 25,600 business miles for 1991.

At the time their case was heard by an IRS Appeals officer, petitioners reconstructed their 1991 mileage to reflect a total of 29,560 business miles. In their trial memorandum to this Court, petitioners reconstructed their 1991 mileage to reflect a total of 36,920[4] business miles.

Petitioners' 1992 Schedule C reflects total miles of 38,286 with business miles of 34,786 and personal miles of 3,500. At the time of the audit, petitioners reconstructed their business mileage for 1992. Respondent accepted petitioners' reconstruction of 28,909 business miles for 1992 but deducted

---

[4] Petitioners' exhibit incorrectly totals the miles at 30,320.

5,000 miles for commuting mileage--20 miles a day--in light of the United States Supreme Court's decision in Commissioner v. Soliman, 506 U.S. 168 (1993).

At the time they submitted their trial memorandum to this Court, petitioners reconstructed their 1992 mileage to reflect a total of 40,045 business miles.

OPINION

A. Additional Income

Section 6001 requires taxpayers to maintain records sufficient to establish the amount of their gross income and deductions. Where taxpayers fail to keep adequate records, the Commissioner is authorized by section 446(b) to reconstruct their income by any reasonable method. Petzoldt v. Commissioner, 92 T.C. 661, 687, 693 (1989). Use of the bank deposits method for reconstructing income is well established. DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Estate of Mason  v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Under the bank deposits method, there is a rebuttable presumption that all funds deposited to a taxpayer's bank account constitute taxable income. Price v.  United States, 335 F.2d 671, 677 (5th Cir. 1964); Haque Estate v. Commissioner, 132 F.2d 775, 777-778 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); DiLeo v. Commissioner, supra at 868. The Commissioner must take into account any nontaxable sources of deposits of which she is aware in determining the portion of the deposits that represent taxable income, but she

is not required to trace deposits to their source.  Petzoldt v. Commissioner, supra at 695-696; Estate of Mason v. Commissioner, supra at 657.

Respondent's revenue agent analyzed petitioners' bank accounts.  She took the net deposits shown on the bank statements, added back any cash withheld, and subtracted out any deposits that were identifiable as nontaxable.

Petitioners argued at trial[5] that their check registers show their gross income.  We find the check registers to be unreliable as they do not tie in with petitioners' bank statements. Petitioners conceded at trial that they did not report any income from magic shows or band activities.  Petitioners further argue that the cash deposits into their bank accounts are not income because the cash came from other bank accounts.  Petitioners, however, have offered no proof to support their claim other than vague, uncorroborated testimony.  Petitioners failed to prove that respondent's reconstruction of income is incorrect.  Rule 142(a). Therefore, we sustain respondent's determination on this issue.

B.   Deduction for Mileage

Petitioners admitted that their auto logs were estimates and not contemporaneously made, as required by section 1.274-5(c)(2)(ii)(a), Income Tax Regs.  Respondent allowed petitioners'

---

[5]  Petitioners' brief consists of a two-page letter in which they assert that no additional tax is owed.  The mileage and negligence issues are not addressed.

auto mileage based on their initial reconstructions submitted at the time of the audit. Petitioners' ever increasing claims for additional mileage are unsubstantiated. This issue was not addressed by petitioners on brief. Deductions are a matter of legislative grace; petitioners have the burden of showing that they are entitled to any deduction claimed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). We find that petitioners have not proven that they are entitled to mileage expenses in excess of those allowed by respondent.

C. Section 6662(a) Accuracy-Related Penalty

Section 6662(a) imposes a penalty in an amount equal to 20 percent of the portion of the underpayment of tax attributable to one or more of the items set forth in section 6662(b), such as negligence or disregard of rules or regulations. Respondent determined that the entire underpayment of petitioners' tax was due to negligence or intentional disregard of rules or regulations. Sec. 6662(b)(1). As in the case of the predecessor section covering the addition to tax for negligence, section 6653(a), petitioners bear the burden of proof on the penalties in issue. Rule 142(a); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence includes a failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the

circumstances.  <u>Neely v. Commissioner</u>, <u>supra</u>.  Disregard includes any careless, reckless, or intentional disregard of rules or regulations.  Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

The accuracy-related penalties of section 6662 do not apply with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion.  Sec. 6664(c)(1).  The determination of whether petitioners acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners have conceded that they failed to keep accurate books and records and that they omitted entire sources of income from their tax returns.  Petitioners have offered no evidence that they were not negligent and do not address the issue on brief.  We cannot be sure that petitioners intended to abandon this issue, but in any case respondent's determination of the applicable penalty must be sustained as petitioners have not met their burden of proof on this issue.

To reflect the foregoing and concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.