JOSEPH CALAFATO AND LENA CALAFATO, HIS WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 93617, 100027. Promulgated October 8, 1940.

*John A. McCann, Esq., J. Reed Craig, Esq., C. Arthur Blass, Esq.,* and *E. W. Farmer, C. P. A.,* for the petitioners.
*Orris Bennett, Esq.,* for the respondent.

#### OPINION.

MELLOTT: On February 19, 1938, the Commissioner determined a "deficiency in income tax, penalty and interest amounting to $23,560.13 for the taxable years ended December 31, 1929, 1930 and 1931." The notice was addressed to "Mr. Joseph Calafato, Mrs. Lena Calafato,

Husband and Wife, 1611 Chestnut Street, Erie, Pennsylvania." The statement attached allocated the amounts to tax and penalties as shown in the schedule below, the balance being interest:

| Year | Deficiency in tax | 25% penalty for delinquency |
|------|------|------|
| 1929 | $8,344.37 | $2,086.09 |
| 1930 | 5,282.14 | 1,320.53 |
| 1931 | 299.59 | 74.90 |
| Total | 13,926.10 | 3,481.52 |

Petition asking for a redetermination of the deficiency was filed with the Board on May 19, 1938, and docketed as No. 93617. It was signed "Joseph Calafato, Lena Calafato, Individually and Jointly" and verified by each of them.

While the above proceeding was pending, the Commissioner determined another deficiency in income tax for the years 1924 to 1928 and 1932 to 1934, inclusive, in the amount of $3,697.26, together with additions to tax aggregating $2,708.12. The following schedule shows the allocation as made by him.

| Year | Deficiency | 25% penalty | 50% penalty |
|------|------|------|------|
| 1924 | $157.50 | $39.38 | $78.75 |
| 1925 | 693.06 | 173.27 | 346.53 |
| 1926 | 190.80 | 47.70 | 95.40 |
| 1927 | 910.34 | 227.59 | 455.17 |
| 1928 | 352.64 | 88.16 | 176.32 |
| 1932 | 56.04 | 14.01 | 28.02 |
| 1933 | 259.29 | | 129.65 |
| 1934 | 1,077.59 | 269.39 | 538.78 |

Petition asking for a redetermination of this deficiency was filed with the Board on September 15, 1939, and docketed as No. 100027. It was signed by attorneys for the petitioners and verified by each of them.

The proceedings were not formally consolidated for hearing. They were, however, heard together.

The controversy can best be depicted by outlining what occurred at the hearing and stating the contentions of the respective parties.

Petitioners contend that the Commissioner is "without authoriy in law" to determine a joint deficiency against them except as to the year 1933 when they filed a joint return. They therefore contend that in Docket No. 100027 our order should be "no deficiency and no penalties for each year except 1933 as to which the deficiency, but not the penalty, is sustained," while in Docket No. 93617 our order should be "no deficiency and no penalty."

Assuming the burden of attempting to prove that the Commissioner had erred in determining joint deficiencies in the amounts set out in the notices for the various years, petitioners called as witnesses a special agent of the Intelligence Unit of the Bureau of Internal Revenue, an internal revenue agent and the internal revenue agent in charge of the Pittsburgh Division. No other evidence was adduced. Direct and cross-examination of these witnesses elicited the following information:

The examining officers, having learned that substantial amounts had been deposited by petitioners in various banks during the period from 1924 to 1934, both inclusive, and having ascertained that no returns had been filed by either of them except for the year 1933 when gross income less than the personal exemption and credit for dependents had been reported, made a complete recapitulation of the bank accounts and a detailed examination of the activities and past history of the petitioners and determined deficiencies as set out in the deficiency notices. The following schedule shows how the taxable income for each year was determined:

### 1924

| | | |
|---|---:|---:|
| Unidentified bank deposits in the savings account of Lena Calafato at the Peoples Bank, Erie, Pa. | | $4,200.00 |
| Purchase of residence at 1611 Chestnut Street, Erie, Pa.: | | |
| Cost | $9,000 | |
| Mortgage | 7,000 | |
| | | 2,000.00 |
| Estimated living expenses | | 2,900.00 |
| Taxable net income | | 9,100.00 |

### 1925

| | |
|---|---:|
| Unidentified bank deposits in the savings account of Lena Calafato of the Peoples Bank, Erie, Pa. | $7,901.95 |
| Mortgage of $7,000 on residence, 1611 Chestnut Street, Erie, Pa., satisfied during the year | 7,000.00 |
| Estimated living expenses | 3,900.00 |
| Taxable net income | 18,801.95 |

### 1926

| | |
|---|---:|
| Unidentified bank deposits in the savings account of Lena Calafato at the Peoples Bank, Erie, Pa. | 7,898.05 |
| Estimated living expenses | 3,900.00 |
| Taxable net income | 11,798.05 |

### 1927

| | |
|---|---:|
| Unidentified bank deposits Lena Calafato savings account at Peoples Bank, Erie, Pa_____ | $1,500.00 |
| Joseph Calafato checking account at American State Bank, Erie, Pa_____ | 15,479.50 |
| | 16,979.50 |
| Estimated living expenses_____ | 4,300.00 |
| Taxable net income_____ | 21,279.50 |

### 1928

| | |
|---|---:|
| Unidentified bank deposits Lena Calafato savings account at Peoples Bank, Erie, Pa_____ | $7,647.39 |
| Joseph Calafato checking account at American State Bank, Erie, Pa_____ | 2,770.64 |
| | 10,418.03 |
| Estimated living expenses_____ | 4,300.00 |
| Taxable net income_____ | 14,718.03 |

### 1929

Income from business:

| | |
|---|---:|
| Deposits in husband's account in Security-Peoples Bank_____ | $34,794.60 |
| Deposits in wife's account in Security-Peoples Bank_____ | 12,650.10 |
| Deposits in husband's account in American State Bank_____ | 33,430.75 |
| Drafts purchased with cash at Security-Peoples Bank_____ | 6,498.00 |
| Total _____ | 87,373.45 |
| Less: Purchases from Corn Products Refg. Co_____ | 18,298.24 |
| | 69,075.21 |
| Interest credited to wife's account_____ | 744.71 |
| Total _____ | 69,819.92 |
| Less: Interest paid on mortgage_____ | 57.75 |
| Taxable net income_____ | 69,762.17 |

### 1930

Income from business:

| | |
|---|---:|
| Deposits in husband's account in Security-Peoples Bank_____ | $57,565.73 |
| Deposits in wife's account in Security-Peoples Bank_____ | 13,531.00 |
| Deposits in husband's account in American State Bank_____ | 1,000.00 |
| Deposits in wife's account in Bank of Italy_____ | 965.58 |
| Total _____ | 73,062.31 |

Less:
    Purchases from Corn Products Rfg. Co_____ $20, 109. 50
    Proceeds of loan included in above deposits_____ 2, 500. 00
                                                                 ——————— $22, 609. 50

                                                                       50, 452. 81
Interest credited to wife's account_____ 1, 240. 01

    Total _____ 51, 692. 82
Less: Interest paid on mortgage_____ 27. 30

    Taxable net income_____ 51, 665. 52

### 1931

Income from business:
    Deposits in husband's account in Security-Peoples Bank_____ $29, 505. 78
    Deposits in wife's account in Security-Peoples Bank_____ 454. 91
    Deposits in joint account in Bank of Italy_____ 525. 00
    Drafts purchased with cash_____ 13, 987. 36

    Total_____ 44, 473. 05
Less:
    Purchases from Corn Products Refining Co._____ $29, 652. 84
    Proceeds from loans_____ 3, 350. 00
                                                   33, 002. 84

                                                    11, 470. 21
Interest credited to wife's account_____ 1, 564. 98
Checks cashed_____ 1, 475. 00

    Total_____ 14, 510. 19
Less: Interest paid on mortgage_____ 16. 00

    Taxable net income_____ 14, 494. 19

### 1932

Unidentified bank deposits:
    Lena Calafato:
        Savings account at Security-Peoples Trust Co., Erie, Pa._____ $428. 17
        Savings account at Bank of Italy, Erie, Pa._____ 11. 50
        Checking account at Bank of Italy, Erie, Pa._____ 710. 00
    Joseph Calafato checking account at Security-Peoples Trust Co.,
        Erie, Pa._____ 250. 00
    Joseph and Lena Calafato joint savings account at Bank of Italy
        Erie, Pa._____ 1. 40

                                                    1, 401. 07
Estimated living expenses_____ 4, 100. 00

    Taxable net income_____ 5, 501. 07

### 1933

| | | |
|---|---|---|
| Net income as disclosed by return | | $2,290.58 |
| Unallowable deductions and additional income: | | |
| Rent income (garage business) | $581.25 | |
| Other income (unidentified bank deposits) | 6,128.52 | |
| | | 6,709.77 |
| Total | | 9,000.35 |
| Nontaxable income and additional deduction: | | |
| Business income | | 30.50 |
| Taxable net income | | 8,969.85 |

### 1934

| | |
|---|---|
| Income: | |
| Unidentified deposits | $9,213.26 |
| Estimated living expenses | 4,100.00 |
| Capital gain | 4,200.00 |
| Taxable net income | 17,513.26 |

The witnesses stated, and there is no evidence to the contrary, that petitioners kept no books of accounts or records. According to their testimony, Joseph Calafato told them that he had received a salary of from $15 to $50 per week from his father-in-law; that he was in the garage business in 1933; that since the death of his father-in-law he had had no occupation or business; that he had acted as middleman in the purchase of corn sugar on which he had made a few cents profit on each bag; that he had acted in the same way in connection with the purchase of several carloads of black molasses; but that notwithstanding these activities, he had had practically no income. He rendered the agents absolutely no assistance in their effort to ascertain the correct amount of income realized by him and his wife, and when they called his attention to the deposits in the various accounts discovered by them, he admitted that he did have a checking account and that there was a savings account in his wife's name. He professed to know nothing, however, about any of the bank deposits or about how much money there was in any of the bank accounts.

The deposits in the bank accounts were, for the most part, in cash and not identifiable. The agents consolidated the bank accounts carried in the name of one or both of the petitioners, because of the absence of records, inability to identify the bank accounts and sources of bank deposits, impossibility of obtaining information as to transactions, and refusal of interviewed witnesses to give information when Calafato's name was mentioned. During the

course of their investigation, they learned that Calafato had the reputation of being in the bootlegging business and that a still, found in a home standing in the name of his wife, had been confiscated. They also ascertained that money had been transferred back and forth between husband and wife through the bank accounts, and that, in several instances, money in an account in the name of Lena Calafato had been used to pay obligations of Joseph Calafato. In at least one instance, the final balance in a savings account of the wife had been combined with money the husband had received when he sold his garage and deposited in another bank account in the name of Lena Calafato. The wife owned some income-producing properties, and rent and interest from some of them had been paid to the husband; but the agents were unable to ascertain the bank account in which this income had been deposited. During the period 1924 to 1934, inclusive, the agents found that the wife had invested $60,000 in income-producing properties.

In computing the taxable net income of the petitioners for each of the years the Commissioner added together the deposits made in the bank accounts in their names, plus an estimated amount for their living expenses. From the total so determined a few items, which could be definitely identified, were subtracted. In determining the amounts included in income as proper living expenses, the Commissioner took into consideration petitioner's style of living as evidenced by annual trips to Florida and the Jersey coast, the ownership of a very large home, and the ownership and use of one or more automobiles. In each instance the living expenses were estimated to be the amount of the marital exemption under the applicable revenue act, plus a dependency credit measured by the number of minor children of the petitioners.

At the close of petitioners' evidence they moved for a determination of no deficiency for each of the years (except 1933) on the ground that the Commissioner had unlawfully combined the income of the petitioners and determined joint liability against them without their consent "and thus arrived at a patently erroneous result, the error appearing on the face of the ninety-day letter and as amplified by the testimony adduced at the hearing." The motion was overruled. Respondent thereupon introduced in evidence photostatic copies of the bank accounts carried in the name of one or both of the petitioners, the joint return of income filed by them for the year 1933, and delinquent joint tax income returns for the years 1929, 1930, and 1931, prepared and filed by the Commissioner under date of January 3, 1938, under section 3176 of the Revised Statutes.

The bank accounts referred to above indicate that deposits were made in the various accounts during the taxable years in the amounts set forth by the respondent in his deficiency notices (or in larger amounts), with the following exceptions: The amount deposited in the savings account in the name of Lena Calafato during 1925 at the Peoples State Bank of Erie was $7,101.95 instead of $7,901.95. No accounts were introduced in evidence by the respondent showing the following deposits in the account of Lena Calafato:

| | |
|---|---|
| 1932 Bank of Italy, Erie, Pa_____ | $710. 00 |
| 1933 American State Bank, Erie, Pa_____ | 184. 50 |
| 1933 Bank of Italy, Erie, Pa_____ | 320. 00 |

The last two amounts were included in the item of unidentified bank deposits of $6,128.52 included in respondent's computation of income for 1933.

At the close of the evidence petitioners moved "for the elimination of the fraud penalty in each one of the years as not having been established by the evidence"; "for the elimination of the negligence penalty on the same grounds"; and for the entry of an order of no deficiency against each of the petitioners "on the ground that all that has been established is a joint liability", which the respondent is without authority to assert except as to the year 1933.

Upon brief petitioners argue that, inasmuch as no returns had been filed by them, the respondent was without authority to determine joint liabilities against them; and, since he "chose to stand on joint liability, an order of no deficiency and no penalties should be entered." They also contend that he has failed to make the necessary proof to support his imposition of the penalties for fraud or for failure to file returns.

The substance of petitioners' argument is that husband and wife are separate taxpayers and have the right to have the tax on their respective incomes computed separately; that the respondent may not set up a joint liability since they have not elected to file joint returns; that there is no such thing as a joint liability unless joint returns have been filed; and, that, inasmuch as the method used by the respondent in determining the deficiencies is palpably wrong, there is no burden on them to establish any other basis for taxing their income under the rationale of such cases as *Helvering* v. *Taylor*, 293 U. S. 507; *Clements* v. *Commissioner*, 88 Fed. (2d) 791; and *National Lumber & Tie Co.* v. *Commissioner*, 90 Fed. (2d) 216.

The essence of the cited cases is that "where the taxpayer's evidence shows the Commissioner's determination to be arbitrary and excessive" he may not be required to pay a tax, which confessedly he does not owe, merely because his evidence is not sufficient "to establish the correct amount that lawfully might be charged against him." Was

the Commissioner's determination "arbitrary and excessive"? These words were apparently used by the Supreme Court in their usual and ordinary sense—arbitrary as meaning capricious, irresponsible, despotic, absolute in power, bound by no law, tyrannical, not governed by fixed rules or standards, and excessive as meaning greater than the usual amount or degree, overmuch, exceeding what is usual or proper. (See Webster's New International Dictionary.) Our inquiry therefore should be, first whether there was any warrant in law or in fact for the Commissioner's determination and, second, whether the amount determined to be due patently exceeds what is usual and proper.

The applicable sections of the revenue acts (sec. 223 (b), Revenue Act of 1924, and corresponding sections of later acts) provide that if a husband and wife living together have an aggregate net income for the taxable year of $2,500 ($3,500 for some years) or over, or an aggregate gross income for such year of $5,000 or over—"(1) Each shall make such a return, or (2) the income of each shall be included in a single joint return, in which case the tax shall be computed on the aggregate income." It seems to be obvious, or in any event the respondent was justified in concluding from the evidence before him, that petitioners' gross and net income for each of the years was in excess of the amount mentioned in the statute. *Each*, therefore, had the obligation to make a return though they also had the election—which is in the nature of a privilege—of filing joint returns. They did not do either. When the Commissioner ascertained the facts disclosed by the bank records he asked the petitioners—or at least Joseph Calafato—to aid him in allocating the income between him and his wife. This he was unable or unwilling to do. Respondent therefore—and under the circumstances we think quite properly— concluded that the income had been realized by the petitioners jointly and determined the deficiencies accordingly.

Petitioners contend that under *Helvering* v. *Taylor*, *supra*, there is no burden on them "to establish any other basis of taxing income, once it has been demonstrated that the method used in the 90-day letter is erroneous." Even if it be assumed that the rule is as contended by petitioners, still they can not prevail. Merely showing that some of the bank accounts were kept in the name of the wife and some in the name of the husband does not establish as a fact that the income was not joint. The fact that obligations of one were frequently paid by checks drawn upon the account of the other indicates that the accounts were, as determined by the respondent, joint. Nor does petitioners' argument to the effect that the wife's occupation was raising children rather than assisting her husband in his business help them. If this were her sole occupation, whence came the

more than $60,000 deposited in bank accounts in her name and whence came the income-producing properties of a value of more than $60,000 which she is shown to have accumulated during the taxable years? The reasonable inference is, as determined by the respondent, that the income obviously received by the petitioners was, as it was treated by them, joint. Applying the rationale of the *Taylor* case as we understand it, we think the petitioners have fallen far short of proving that the Commissioner's determination was either arbitrary or excessive.

It is apparent we are of the opinion the Commissioner's determination should not be set aside upon the showing made; but other points discussed upon brief may be noticed.

Petitioners contend that a joint deficiency may be determined against a husband and wife only for years when they filed joint returns. They cite no authority in support of this contention but call attention to the fact that in *Charles A. Rogers*, 38 B. T. A. 16; affd., 111 Fed. (2d) 987, one of the cases relied upon by the respondent as supporting his view that they are jointly and severally liable for the deficiencies, the husband and wife had filed joint returns. It is true that under the revenue acts a husband and wife living together have the election of filing individual returns or a single joint return; but where they have made no election, have filed no returns and have kept their books and records in such a fashion that it is impossible for the Commissioner to tell how much of what they have treated as "joint income" was in fact the separate income of one or the other, may they be heard to say that a joint and several liability may not be asserted against them? We think not. We do not intimate that we are overruling any previous decisions of the Board or refusing to follow any applicable court decisions. If a husband or wife, in a proceeding before us, establishes a basis for making an allocation of income (*Cole* v. *Commissioner*, 81 Fed. (2d) 485) or an equitable basis for apportioning it (*Commissioner* v. *Rabenold*, 108 Fed. (2d) 639; *Celia Seder, Executrix*, 38 B. T. A. 874) he or she will be relieved of the portion of the tax allocable to the income of the other, *Ella T. Flaherty, Executrix*, 35 B. T. A. 1131; *Frank W. Darling*, 34 B. T. A. 1062; *Charles F. Fawsett*, 31 B. T. A. 139. But petitioners made no effort to furnish us with this information, being content to rely merely upon a showing that separate bank accounts were maintained by them. In this posture of the proceeding we feel that we have no alternative but to approve the Commissioner's determination for failure of the petitioners to sustain their burden of proof.

The deficiency for 1925 will be recomputed inasmuch as it appears from the bank records introduced in evidence that the amount of

deposits made in the account carried in the name of Lena Calafato at the Peoples Bank of Erie during 1925 was $7,101.95, instead of $7,901.95, as determined by the respondent.

There remains for consideration the additions to tax for failure to file a return and for fraud. Petitioners filed no returns of income for the years in question except for the year 1933. Under such circumstances the imposition of the 25 percent addition to tax is mandatory under the provisions of section 3176, Revised Statutes (26 U. S. C. 1512, 1524; Internal Revenue Code, sec. 3612). *Scranton, Lackawanna Trust Co.*, 29 B. T. A. 698; affd., 80 Fed. (2d) 519; certiorari denied, 297 U. S. 723. The additions to tax for failure to file returns are therefore approved.

The burden of proving fraud was on the Commissioner. The evidence, much of which has already been referred to, shows that the petitioners' failure to keep adequate books and records from which their correct income tax liability for the taxable years could be determined, forced the Commissioner to resort to bank records. These records disclose that large deposits were made in accounts carried in the name of one or both of the petitioners. The Commissioner was unable to determine the source or ownership of the amounts so deposited and we are unable to do so upon the present record. The deposits were far in excess of the personal exemptions to which the petitioners were entitled.

The fact that large unexplained amounts passed through petitioners' accounts during the taxable years is substantial evidence to be considered in determining the question of fraud. *Oliver* v. *United States*, 54 Fed. (2d) 48. When to this is added the fact that the Commissioner was unable to obtain from petitioners any information whatsoever relative to the source from which they obtained the amounts deposited, the reasonable conclusion seems to be that said amounts represented income received by them. Obviously, if they represented gifts, return of capital, or trust funds—as set out in their petitions—petitioners would have taken advantage of the opportunity to submit evidence to that effect.

In *M. Rea Gano*, 19 B. T. A. 518, this Board said:

A failure to report for taxation income unquestionably received, such action being predicated on a patently lame and untenable excuse, would seem to permit of no difference of opinion. It evidences a fraudulent purpose.

The evidence clearly indicates that these petitioners received substantial amounts of income during each of the taxable years and it is undisputed that they filed but one return, viz., for the year 1933. In this return they substantially understated the amount of their income. Respondent has proved to our satisfaction that a part of the deficiency for each of the taxable years was due to fraud with intent

to evade tax, and we so hold. Cf. *Russell C. Mauch*, 35 B. T. A. 617; affd., 113 Fed. (2d) 555; *Pincus Brecher*, 27 B. T. A. 1108; *Ollie V. Kessler*, 39 B. T. A. 646. We therefore sustain respondent's determination that 50 percent of the deficiency for each taxable year should be added as prescribed by section 275 (b) of the Revenue Acts of 1924 and 1926, and section 293 (b) of the Revenue Acts of 1928, 1932, and 1934.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*