Simon Bloom v. Commissioner.
Bloom v. Commissioner
Docket No. 12982.
United States Tax Court
1948 Tax Ct. Memo LEXIS 128; 7 T.C.M. (CCH) 517; T.C.M. (RIA) 48138; July 29, 1948
Simon Bloom, pro se. Whitfield J. Collins, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency of $309.12 in petitioner's income and victory tax for 1943 by adding to gross income reported for 1942 $1,268, and by disallowing a deduction of $563 claimed as medical expense and a deduction of $500 claimed as an attorney's fee paid for defense against criminal prosecution. The year 1942 is involved by virtue of section 6, Current Tax Payment Act of 1943. Petitioner contends that the addition to gross income was arbitrary and without factual basis and that the two deductions were improperly disallowed. The case was submitted upon a stipulation and exhibits, which we hereby incorporate as findings of fact, and upon testimony. From *129 these we make the following: Findings of Fact Petitioner, a resident of New York, New York, filed his income tax returns for 1942 and 1943 with the collector of internal revenue for the second district of New York. He has been engaged there in the practice of medicine since 1911. In September 1941 an investigation was instituted by the Bureau of Narcotics which resulted in the discovery of 749 narcotic prescriptions issued by petitioner. Representing himself as a drug addict, an investigator on March 3, 1942, presented himself at petitioner's office and purchased such a prescription for $5, petitioner's usual fee. Petitioner was immediately arrested, but was released on the posting of $500 bail, and continued to practice medicine. Late in 1942 he spent seven weeks in a hospital on account of illness, and paid for medical attention $612, of which he was reimbursed for $291 by benevolent societies under insurance contracts. In November 1945 he was convicted of the illegal sale of narcotic prescriptions and given a prison sentence of a year and a day. He was committed in December 1945 and released on June 1, 1946. His license to practice medicine was revoked on May 28, 1947, and has *130 not been renewed. Of the 749 prescriptions discovered, 173 were issued by petitioner in 1942 prior to March 3. These prescriptions were found by the Narcotic Bureau agents in about 50 pharmacies visited, and the number is not necessarily the total which petitioner issued. It was petitioner's practice to note down the fees received by him, and at the end of a week to enter the total in a book, which he claims is now lost. On January 1, 1942, petitioner held $550 in a postal savings account and war savings bonds which cost $900; on March 2, 1942, he held $1,100 in the account and bonds of a cost of $1,350; on December 31, 1942, he held $650 in the account and bonds of a cost of $300. On the three dates his bank balances were $127.05, $201.62 and $55.03, respectively. His wife, who had no independent income, opened a bank account with $225 on May 22, 1942. At the end of the year its balance was $79.61. Petitioner and his wife lived simply and frugally. On his income tax return for 1941 petitioner reported gross income of $2,281.70; for 1942, $2,315.10; for 1943, $903.28. For 1941 and 1943 his claimed deductions were less than $20. For 1942 he claimed aggregate deductions of $1,681.40, *131 which subtracted from gross income of $2,315.10, resulted in a net income of $633.70. Of the deductions claimed, $560 was for medical expenses and $500 was an attorney's fee paid for defense against the criminal charges. The Commissioner disallowed those two deductions and increased gross income to $3,583.10 by adding $1,268 as "average daily sales to March 3 of prescriptions." Opinion Petitioner filed a 1942 income tax return on which he reported gross income of $2,315.10 and claimed certain deductions. He testified that the amount reported was correct, but alleging the loss of a record book in which he entered the total of weekly receipts from patients' fees, he could not buttress his testimony by any documentary evidence. The Commissioner added to gross income reported $1,268 described as "Average daily sales to March 3, 1942, of prescriptions as per records of Narcotic Bureau." The explanation is not clear, but he defends the determination by the argument that the increase in petitioner's bank deposit and bonds between January and March, 1942, was in excess of $1,000, and conceding that petitioner's income likely diminished after arrest for the selling of narcotic prescriptions, *132 he makes a computation of petitioner's expenditures - those deducted on the return and others such as the $500 for bail - and finds that petitioner's gross income exceeded these expenses by only $182.80. To this figure he adds the $291 received as an insurance payment for hospital treatment, thereby arriving at a total of $473.80 remaining after expenses. This figure he insists was inadequate to provide a year's living expenses for petitioner and his wife, or at least "it is not feasible to believe that the petitioner, a doctor of thirty years experience, would have found such an existence necessary during a period of an acute shortage of doctors." Respondent admits that petitioner's net worth, on the evidence adduced, was only $7.59 greater at the end than at the beginning of 1942, but urges approval of the determination of additional income because circumstances indicate that petitioner's "normal income continued to be sufficient to meet his living expenses." Petitioner protests that he and his wife live most penuriously and could and did subsist on the income reported. If a taxpayer keeps no records or if those kept fail to reflect income correctly, a computation may be made in *133 accordance with such method as in the Commissioner's opinion does truly reflect income. Section 41, Internal Revenue Code; Bishoff v. Commissioner, (C.C.A., 3rd Cir.) 27 Fed. (2d) 91. And in many such cases a computation based on a disclosed annual increase in wealth has received judicial approval as a measure for taxable receipts. Hoefle v. Commissioner, (C.C.A., 6th Cir.) 114 Fed. (2d) 713; O'Dwyer v. Commissioner, (C.C.A., 5th Cir.) 110 Fed. (2d) 925; Louis Halle, 7 T.C. 245. In some cases estimated living expenses have been approved as a proper addition to the increase in wealth so treated. Kenney v. Commissioner, (C.C.A., 5th Cir.) 111 Fed. (2d) 374; Joseph Calafato, 42 B.T.A. 881, aff'd (C.C.A., 3rd Cir.) 124 Fed. (2d) 187. In all such cases, however, the determination approved was based on the Commissioner's ascertainment that the taxpayer held cash, bank accounts, securities or other property at the end of the year in excess of what he had held at the beginning. It was the taxpayer's failure to account for these increments in wealth which the courts stressed in *134 sustaining this treatment of them as taxable income. As said in Estate of Hague v. Commissioner, (C.C.A., 2nd Cir.) 132 Fed. (2d) 775, cert. den. 318 U.S. 787: "* * * the determinations of the Commissioner were based on inferences properly drawn from the facts proved by the evidence and were therefore entitled to be accepted as prima facie correct. * * *" The Commissioner's determination here, however, lacks the support of any ascertained facts or inferences indicating receipts in excess of the gross income reported. The 173 prescriptions, sold normally at $5 each, would indicate income of only $865, or much less than reported. Petitioner swore that he prepared his return from records, now allegedly lost; stresses that the amount stated was greater than gross incomes reported by him in 1941 and 1943, which he alleges were accepted by the Commissioner as correct, and charges that the Commissioner acted in a purely arbitrary manner in adding the $1,268 as additional income. The Commissioner, in the deficiency notice, by his evidence and on brief, does not purport to have based his addition to income on any ascertained finding of receipts, and attempts to *135 justify it merely by the inadequacy of $2,310 to cover petitioner's known expenses and probable living requirements. We think that such a determination was arbitrary and should not be approved. Cf. Helvering v. Taylor, 293 U.S. 507. The record establishes that petitioner and his wife lived frugally. There are not even extravagant expenditures to support an inference of unexplained receipts. The determined addition of $1,268 to income reported is therefore not sustained. Petitioner complains further of the Commissioner's disallowance of $560 for medical expenses and of $500 paid an attorney for defending petitioner against the criminal charges. The parties have stipulated that petitioner paid $612 for medical attention and received $291 under insurance contracts with benevolent societies because of his illness. A proper deduction should be computed and allowed on this account in accordance with section 23(x), Internal Revenue Code. The attorney's fee, being incurred in connection with a criminal prosecution leading to petitioner's conviction, was properly disallowed as a deduction. Burroughs Bldg. Material Co. v. Commissioner, (C.C.A., 2nd Cir.) 47 Fed. (2d) 178. *136 Decision will be entered under Rule 50.