Dennis D. Carlin v. Commissioner. Dennis D. Carlin and Blanche (Steinberg) Carlin v. Commissioner.
Carlin v. Commissioner
Dockets Nos. 71734 and 71735.
United States Tax Court
T.C. Memo 1960-236; 1960 Tax Ct. Memo LEXIS 58; 19 T.C.M. (CCH) 1319; T.C.M. (RIA) 60236; October 31, 1960
Colin C. Macdonald, Jr., Esq., and Edward H. Hance, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in income tax and additions to the tax against the petitioner, Dennis D. Carlin, for the years 1945, 1946, and 1947, and against the petitioners, Dennis D. Carlin and Blanche (Steinberg) Carlin, for the years 1948, 1949, and 1950, as follows: Additions to Tax
Sec.
Sec.
Sec.
Petitioners
Docket No.
Year
Deficiency
293(b)
294(d)(1)(A)
294(d)(2)
Dennis D.
71734
1945
$ 6,015.47
$3,007.73
$540.18
$360.12
Carlin
1946
5,735.70
2,867.85
523.13
348.75
1947
5,480.82
2,740.41
469.82
313.22
Dennis D.
Carlin and
Blanche
71735
1948
4,787.50
2,393.75
367.66
245.10
Steinberg
Carlin
1949
6,751.34
3,375.67
697.94
465.29
1950
10,284.42
5,142.21
457.63
*59 Respondent now concedes error with respect to the additions to the tax under section 294(d)(2) of the Internal Revenue Code of 1939 for the years 1945 through 1949. There was no appearance on behalf of the petitioners at the trial. With respect to the years 1945 and 1950, the imposition of the deficiencies is barred by the Statute of Limitations unless there was a false or fraudulent return with intent to evade tax. The deficiencies for the years 1946 and 1947 are barred unless there was a false or fraudulent return with intent to evade tax, or the 5-year period of limitation under section 275(c) of the 1939 Code as extended by agreements executed by the parties is applicable because of petitioner's omission from his return of amounts which should have been reported therein in excess of 25 per cent of the amounts of gross income reported. For the taxable years 1948 and 1949, the parties executed agreements extending the period of limitation pursuant to section 276(b) of the 1939 Code within 3 years after the date of filing of the returns for these years to a time subsequent to the mailing of the notice of deficiency. The deficiencies for the years 1948 and 1949, being uncontested, *60 are approved as determined. The issues for decision are whether all or part of the deficiencies in tax determined by the respondent for the years 1945 through 1950 were due to fraud with intent to evade payment of income tax and whether the deficiencies for the years 1945 through 1947 and the year 1950 are barred by the Statute of Limitations. Findings of Fact Petitioner, Dennis D. Carlin, whose name was legally changed from Dennis Caplin to Dennis Carlin in 1945, filed an individual Form W-2, Employee's Optional Income Tax Return, for the calendar year 1945 and individual Federal income tax return (Form 1040) for the taxable year 1946 with the collector of internal revenue for the first district of New York. For the year 1947, petitioner, Dennis D. Carlin, filed an individual Federal income tax return (Form 1040) with the collector of internal revenue for the third district of New York. For the taxable years 1948, 1949, and 1950, petitioners, Dennis D. Carlin and Blanche Steinberg Carlin, filed joint Federal income tax returns (Forms 1040) with collector of internal revenue for the second, third and fourteenth districts of New York, respectively. Petitioner, Dennis D. Carlin, *61 hereinafter referred to as petitioner used in the singular, was educated in the public school systems of New York City and Washington, D.C. He attended high school but did not graduate. He took courses in production management, and allied subjects at Cooper Union, a small college located in New York City. During 1945, 1946, and 1947, petitioner was married to Muriel Greene, who was also known as Marcia Greene. On February 13, 1948, Marcia Greene Carlin and petitioner were divorced. In May of 1948, petitioner married Blanche Steinberg. During the taxable years 1945 through 1950, petitioner was employed as an advertising executive by Republic Pictures Corporation of New York City. His duties in this position included the placing on behalf of Republic Pictures of advertising contracts with outside firms in the photo-engraving, printing, and related fields. The duties of his position required a knowledge, on his part, of cost figures, discounts, and commissions, and he was considered in the trade as an astute businessman. Blanche Steinberg Carlin was employed by Harvey Features Syndicate of New York City during the taxable years 1948, 1949, and 1950. During these years she also received *62 the amounts of $4,309.59, $6,363.90, and $6,090.98, respectively, from Service Photo Engraving of New York City, although she did not report there for work and was unknown to any of the employees there. She was carried on the payroll solely because of the request of the firm's salesman in charge of its Republic Pictures account, and the amounts paid to her were in payment for receiving said account. Petitioner, on the Form W-2 filed by him for the year 1945, reported as total income, $4,143.63 received in wages paid by Republic Pictures Corporation. On this form, he listed the name of his wife as Marcia and stated that she had no income not included in the return. For the year 1946 petitioner, on his individual Federal income tax return, listed as his total income the amount of the salary received by him from Republic Pictures Corporation of $5,200. He did not claim therein his wife as a dependent an answered "Yes" to the question, "Is your wife making a separate return for 1946?" For the year 1947 petitioner, on his individual Federal income tax return, reported income in the total amount of $5,200, which amount was paid to him as salary by Republic Pictures Corporation, and *63 deducted a capital loss of $1,000, showing a gross taxable income of $4,200. On this return he answered "No" to the question, "Is your wife making a separate return for 1947?" and claimed as a dependent his wife, Marcia. On their joint Federal income tax return for 1948 petitioners, Dennis D. and Blanche Steinberg Carlin, reported total income received of $13,486.56 which consisted of wages of Dennis D. Carlin from Republic Pictures Corporation of $5,300, wages of Blanche Steinberg Carlin from Harvey Features Syndicate of $3,876.97, and payment to Blanche Steinberg Carlin from Service Photo Engraving of $4,309.59. Petitioners claimed a capital loss of $2,138 on worthlessness of debts and sales of securities, a capital loss carryover from the year 1947 of $929.25, and a business loss of $9.02 on the operation of Carlinart Company. They deducted the amount of $1,009.02 in computing adjusted gross income for the year. For the year 1949, Dennis D. and Blanche Steinberg Carlin, on their joint Federal income tax return, reported total income received of $18,741.13 which consisted of wages of Dennis from Republic Pictures Corporation of $5,430, wages of Blanche from Harvey Features Syndicate *64 of $4,235, payment to Blanche from Service Photo Engraving of $6,363.90, and other income of $2,712.23. The other income was computed by deducting from the reported Schedule C income of Carlinart Company of $3,712.23 a capital loss of $1,000. Petitioners reported on the return a net loss from the sale of securities of $682.05 and a capital loss carryover from 1947 and 1948 of $2,067.25. On their joint income tax return for the year 1950 petitioners reported total income received of $16,250.98, consisting of wages of Dennis of $5,610 from Republic Pictures Corporation, wages of Blanche from Harvey Features Syndicate of $4,550, and payments to Blanche from Service Photo Engraving of $6,090.98. They also reported Schedule C income from Carlinart Company of $1,907.72 and Schedule C loss from Avalanche Acres of $9,312.98 and a partnership loss from Brad Farms of $2,535. They reported on this return a capital gain from the sale of securities of $550.87 which was computed by deducting a capital loss carryover from the years 1947 through 1949 of $1,749.30 from their reported net capital gain for the year 1950 of $2,300.17. For the years 1946 and 1947 petitioner and respondent executed *65 agreements within 5 years after the date of the filing of the return for each such year extending the period of limitation for assessment of income tax, pursuant to section 275(c) of the 1939 Code, to June 30, 1958. For the years 1948 and 1949 petitioners and respondent executed within 3 years of the date of the filing of the income tax return for each such year agreements extending the period of limitation for the assessment of income tax to June 30, 1958. The notice of deficiency for the years 1945 through 1947 and the notice for the years 1948 through 1950 each was mailed on October 30, 1957. During the taxable years 1945 and 1946 petitioner had interest income of $113.33 and $44.92, respectively, which was not reported in his income tax return. Petitioner maintained brokerage accounts with Sulzbacher, Granger & Co. and Francis I. du Pont & Co. during the years 1948, 1949, and 1950. Dividends were credited to these accounts and checks in the amounts thereof were issued to petitioner. These checks were either cashed by petitioner or deposited in his account at the Manufacturers Trust Company or credited to his brokerage account. Petitioner has admitted receipt of these dividend *66 checks. During the taxable years 1948, 1949, and 1950 petitioners received dividend income in the total amounts of $50, $1,347, and $3,215, respectively, which was not reported in their income tax returns. Respondent conceded at the trial that he had overstated petitioner's dividend income for the year 1950 by $100. Petitioner deposited in his Manufacturers Trust account checks drawn by Offset Programs, Inc., and Super Quality Company, Inc. Eighty-five checks were drawn to the order of Dennis Carlin or persons designated by him during the years 1946 through 1950 by these companies which were charged off by these companies as business expenses and deducted for income tax purposes. The checks issued by Super Quality Company Inc., were in payment to Dennis Carlin for receiving Republic Pictures accounts. Super Quality Company, Inc., deducted the amounts of the checks issued to petitioner on its books as advertising expenses. Of the checks made payable to Dennis Carlin the earliest was dated October 15, 1946, and was for $100. Prior payments had been made to Dennis Carlin for receiving the Republic Pictures Corporation account. The procedure had been established by the father of Raymond *67 Vernon Schilt, president of Super Quality Company, Inc. If the earlier payments were by check, the checks had been destroyed and Schilt's father died in 1949. Beginning with a check dated December 12, 1947, for $75, 38 checks were issued by Offset Programs, Inc., of New York City to petitioner. Four checks were issued by Offset Programs, Inc., to David Steinberg and one each to Blanche Steinberg and James J. Powers at petitioner's specific direction. James J. Powers was petitioner's horse trainer. David Steinberg was the brother of Blanche Steinberg Carlin. All but 5 of the 85 checks issued to petitioner or to persons designated by him by Super Quality Company, Inc., and Offset Programs, Inc., were endorsed by Dennis Carlin or by the payees and Dennis Carlin, and either cashed by petitioner or deposited to petitioner's account in the Manufacturers Trust Company. Two of the remaining five checks were cashed by James J. Powers, two were endorsed by Dennis Carlin over to his ex-wife, Marcia, and one was endorsed over to Blanche Steinberg Carlin. Louis Warshaw, who was president of Offset Programs, Inc., during the years 1947 through 1950, met petitioner sometime in the year 1947. *68 Prior to Warshaw's meeting petitioner, his company had done no business with Republic Pictures Corporation. Warshaw obtained the Republic Pictures account from petitioner and paid amounts to Dennis Carlin during the years 1947 through 1950 for obtaining the Republic Pictures account. All payments made to Dennis Carlin or to persons designated by him for obtaining the Republic Pictures account were charged to commissions and deducted as business expenses by Offset Programs, Inc. During the taxable year 1946, petitioner had income in the amount of $200 from payments received by him from Super Quality Company, Inc. In the taxable year 1947, he received $75 from Offset Programs, Inc.; and during the taxable years 1948, 1949, and 1950, petitioner received payments from both of these companies in at least the amounts of $5,193, $12,957, and $21,519, respectively. All of these payments were received by petitioner for placing accounts of Republic Pictures Corporation with Super Quality Company, Inc., and Offset Programs, Inc. During a part of the year 1945 savings bank accounts were maintained in the name of Muriel Greene at the Fulton Savings Bank, Williamsburgh Savings Bank, and the Flatbush *69 Savings Bank. On January 19, 1945, a deposit in the amount of $4,154.44 was made to the account of Muriel Greene at the Williamsburgh Savings Bank. On March 1, 1945, a deposit was made to the account of Muriel Greene at the Flatbush Savings Bank in the amount of $3,212.09, and on April 4, 1945, a deposit in the amount of $1,700 was made to this account. On March 7, 1945, a deposit in the amount of $4,577.40 was made to the account of Muriel Greene at the Fulton Savings Bank. Deposits in these three banks in the accounts of Muriel Greene totaled $13,643.93 in 1945. In the early part of September 1945, the balances in each of these accounts were transferred to new accounts opened in the name of Dennis Carlin in the same banks. During the years 1944 through 1950, petitioner maintained a bank account in the Manufacturers Trust Company. Deposits to and withdrawals from this account were made in the years 1944 through 1950. For the year 1944 respondent's agents, upon checking this account, found no deposits therein which they were unable to identify as to the source. For the years 1945 through 1950, respondent's agents found deposits of cash and checks in petitioner's account in the Manufacturers *70 Trust Company which they were unable to identify as to source in the amounts of $1,700, $7,900, $15,670.25, $7,935, $2,691.25, and $700, respectively. Respondent, in his determination of the deficiencies and additions to the tax here involved, included these amounts in petitioner's income for the respective years and in the year 1945 included in petitioner's income the $13,643.93 deposited in the accounts of Muriel Greene, part of which was transferred to petitioner's bank accounts. In making the determination of the amount of unexplained bank deposits, respondent's agents eliminated from the computation all exchanges and redeposits which they were able in any manner to identify, and considered all unexplained cash deposits of $300 or less and all unexplained check deposits of $100 or less as not representing unidentified deposits. On March 22, 1946, petitioner withdrew, by cashier's check, $900 from his Flatbush Savings Bank account and $2,250 from his Williamsburgh Savings Bank account. Both checks were paid through the First National Bank and Trust Company of Macon, Georgia. The amounts so withdrawn by petitioner were part of an investment in the amount of $10,000 made by him *71 in the C.D. and G. Liquor Store of Macon, Georgia in March 1946. The $10,000 investment was repaid to petitioner by check in April of 1947. The repayment check for this investment was deposited in petitioner's Manufacturers Trust bank account on April 3, 1947. Since respondent's agent was unable to identify the source of the $6,850 investment by petitioner in the C.D. and G. Liquor Store which did not represent withdrawals from his savings account, respondent included this amount as income in his determination of the deficiencies and additions to the tax herein. Petitioner made a deposit of $950 in cash to his brokerage account with Ward and Company during the year 1946. Respondent's agents were unable to identify the source of this cash deposit and respondent included the amount in determining the deficiencies and additions to tax for the year 1946. Dennis Carlin made 29 sales of stock through his accounts with Sulzbacher, Granger & Co. and Francis I. du Pont & Co. during the year 1950, only 6 of which were reported on his income tax return for that year. An adjustment to include the 23 unreported sales resulted in additional capital gain to petitioner for the taxable year 1950 *72 in the amount of $4,390.19. For the taxable years 1949 and 1950, petitioners' tax returns were prepared by a certified public accountant from information submitted by petitioner. The accountant asked petitioner if he had any income not disclosed in the information submitted to him, specifically with respect to interest income, dividend income, and income from capital transactions. Petitioner stated to the accountant that he had received no income other than that disclosed to the accountant. All items of income disclosed by petitioner to the accountant were included in petitioners' income tax returns for 1949 and 1950. Carlinart Company, Avalanche Acres, and Brad Farms were business enterprises in which petitioner held an interest. Each of these enterprises had its own bank account in which all of its income was deposited. None of the withdrawals or deposits in the accounts of these business enterprises was traceable to any of the unexplained bank deposits of Dennis Carlin during the years here at issue. Dennis Carlin was in draft-exempt status under the Selective Service Act in the years just prior to those here at issue, having claimed dependent relatives who had limited or *73 no income or funds. Petitioner was interviewed by respondent's special agent and appeared to the special agent to be a man of good average intelligence who fully understood all of the questions asked of him. Petitioner admitted receiving the dividends which respondent's special agent had shown as received by him and admitted receiving the payments from Offset Programs, Inc. He said that in the beginning he had the checks made out to third parties, since he was a little afraid and did not want his employer to know he received the extra income. When asked about the checks from Super Quality Company, Inc., he admitted receiving them and stated they were gifts for his having turned over to Super Quality Company, Inc., the Republic Pictures account. Respondent's agents submitted to petitioner a detailed list of the unidentified bank deposits determined for the years 1945 through 1950 and requested an explanation as to the sources of these amounts and as to the source of the $6,850 investment by petitioner in the C.D. and G. Liquor Store in the year 1946, but received no explanation. When interviewed by respondent's agents, petitioner made no claim of moneys received as gifts or inheritance *74 or that Muriel (or Marcia) Greene Carlin had income during any of the taxable years involved. Petitioner was indicted on one count of violating section 145(b) of the Internal Revenue Code of 1939, by knowingly filing a false and fraudulent income tax return for the taxable year 1950 and attempting to evade the payment of proper income tax due for that year. Petitioner pleaded guilty as charged in the indictment before the United States District Court for the Northern District of New York and was sentenced to pay a fine of $10,000 and to stand committed until paid. For the years 1946, 1947, 1948, 1949, and 1950 there are deficiencies in petitioner's income tax as determined by respondent (except for the adjustment for the year 1950 to reflect respondent's concession that his determination for that year overstated petitioner's income by $100), a part of which in each such year is due to fraud with intent to evade payment of tax. The return for each of those years was false and fraudulent with intent to evade tax. For the year 1945 respondent has not shown that any part of the deficiency was due to fraud with intent to evade payment of income tax, or that the return was false or fraudulent *75 with intent to evade tax. Assessment of any deficiency for this year is barred by the Statute of Limitations. The petitioners are liable for the addition to the tax imposed by section 294(d)(1)(A) of the Internal Revenue Code of 1939 for the taxable years 1946, 1947, 1948, and 1949 as determined by the respondent, and to the addition to the tax under section 294(d)(2) for the taxable year 1950. Since petitioner failed to appear and contest the deficiencies as determined by respondent, the amounts of the deficiencies as determined in 1946 through 1950 are approved except to the extent of the concession made by respondent at the trial. Opinion The evidence adduced by the respondent for the year 1945 shows deposits in the bank accounts of petitioner's then wife, Marcia or Muriel Greene, for which respondent's agents found no explanation as to source, and a cash deposit of $1,700 in petitioner's bank account for which respondent found no explanation. The evidence shows that petitioner was employed in this year by Republic Pictures Corporation, that he received two Forms W-2 withholding statements for that year from Republic Pictures Corporation, one showing a total payment to him of *76 $475 and the other a payment of $3,668.63, both made out in the name of Dennis Carlin. The record does not show at what date Dennis Carlin commenced his employment with Republic Pictures Corporation nor any direct evidence that Dennis Carlin was receiving amounts during this year for placing Republic Pictures accounts with various companies. An investigation of Dennis Carlin's account by respondent's agent for 1944 had disclosed no unidentified deposits. No evidence is shown as to what bank accounts, if any, were maintained by Muriel or Marcia Greene in 1944 or earlier years, or what sources of income, if any, she may have had in those years. There is no evidence to prove that either Muriel Greene or Dennis Carlin did not have funds at the beginning of the year 1945 which were held other than on deposit in banks. In these circumstances, unexplained bank deposits are not sufficient to constitute clear and convincing evidence of fraud. Denny York, 24 T.C. 742 (1955). The record shows $113.33 of interest income not reported by petitioner in the year 1945, but this small amount of unreported income is insufficient to be clear and convincing evidence of fraud. Since it is *77 conceded that the deficiency as determined for the year 1945 is barred by the Statute of Limitations, in the absence of fraud, there is no deficiency for this year. For the years 1948 through 1950 the amounts as shown by our findings as received by petitioner as income form dividends and payments for placing accounts of Republic Pictures Corporation are in such large amounts as to be clear and convincing evidence that petitioners' omission of these amounts from their income tax returns was due to fraud with intent to evade tax. The type of position held by petitioner with Republic Pictures, the testimony with respect to his general intelligence, and the fact that he pleaded guilty to the fraud indictment for the year 1950 confirm the conclusion that omission of these amounts from income was not due to inadvertence or mere negligence but to fraud with intent to evade the payment of tax. The evidence with respect to the years 1946 and 1947 shows that in these years petitioner was receiving some identifiable payments from the placing of Republic Pictures Corporation accounts and that some amount of payments in excess of these specifically identifiable ones was probably received. This *78 evidence, when considered in conjunction with the showing of large unidentified bank deposits and investments from unidentified sources and the fact that in each of these years the only income reported by petitioner on his income tax return was from salary from Republic Pictures Corporation, clearly indicates fraud. It would be extremely unlikely that income from such a source as payments for placement of accounts of petitioner's employer would have inadvertently escaped petitioner's notice at the time his tax returns were filed even though the amounts of such income may have been small. That a man of petitioner's intelligence would have considered these amounts to represent gifts or nontaxable income is unlikely. All these facts, considered together constitute clear and convincing evidence of fraud. Goe v. Commissioner, 198 F. 2d 851 (C.A. 3, 1952), affirming a Memorandum Opinion of this Court, certiorari denied 344 U.S. 897; Bernstein v. Commissioner, 267 F. 2d 879 (C.A. 5, 1959), affirming a Memorandum Opinion of this Court; and Joseph Calafato, 42 B.T.A. 881, affd. per curiam, 124 F. 2d 187 (C.A. 3, 1941). A part *79 of the deficiency in each of the years 1946 and 1947 is due to fraud with intent to evade payment of tax, and in each of these years petitioner filed a false and fraudulent return with intent to evade tax. Since petitioner has failed to appear and contest the amounts determined as deficiencies by respondent, the amounts as so determined for each of the years 1946 through 1950 are sustained. Since we have determined that the deficiencies for the years 1946 and 1947 are not barred, it is unnecessary to pass on the applicability of the 5-year period of limitations under section 275(c) of the 1939 Code. The additions to tax under section 294(d)(1)(A) for the years 1946 through 1949 and the addition to the tax under section 294(d)(2) for the year 1950, not being contested by the petitioner, are sustained in accordance with respondent's determination. Since there is no deficiency for the year 1945, there is no addition to the tax under section 294(d)(1)(A) for that year. Decision will be entered under Rule 50.