EARL P. SHAPLAND, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shapland v. Commissioner
Docket No. 6465-77.
United States Tax Court
T.C. Memo 1979-300; 1979 Tax Ct. Memo LEXIS 224; 38 T.C.M. (CCH) 1172; T.C.M. (RIA) 79300; August 8, 1979, Filed Thomas E. Harrington, for the petitioner. Harmon B. Dow, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent determined a deficiency of $1,767.94 in petitioner's Federal income tax for 1974. The only issue for our determination is whether petitioner filed an effective joint return for 1974.
This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference. At the time he filed his petition and during the entire year of 1974, petitioner Earl P. Shapland resided in Sarasota, Florida. Petitioner timely filed a separate Federal income tax return with the Office of the Internal Revenue Center in Chamblee, *226 Georgia. It has been stipulated that this return was not intended to be a joint return at the time it was filed. Throughout 1974, petitioner was married to Wilma O. Shapland (hereinafter Wilma). Since 1963, however, petitioner and Wilma have lived apart. Wilma maintained her separate residence in Champaign, Illinois during 1974. For each of the taxable years 1966 through 1972, Wilma filed a Federal income tax return as a married individual filing a separate return. Wilma did not file any return for 1973 and 1974. On an audit of petitioner's 1974 return, conducted by Revenue Agent Joel Cuffman (hereinafter Cuffman) in May or June of 1975, petitioner's representative Joseph J. McNamara unsuccessfully requested Cuffman to compute petitioner's tax liability according to rates applicable to married individuals filing a joint return. In a written protest on behalf of petitioner, filed December 12, 1975, a second request to use joint return rates was made. Subsequently, the same request was made to and rejected by both District Conferee F.G. Haegle (hereinafter Haegle) and Appellate Conferee Thomas L. Martens (hereinafter Martens). During each respective conference, Haegle and *227 Martens informed petitioner that had they determined a joint return was allowable, the matter would be handled administratively and an amended return would not be necessary. On December 10, 1976 the Circuit Court of the 6th Judicial Circuit, Champaign County, Illinois entered a decree of divorce between petitioner and Wilma. Among other provisions the court ordered that petitioner be authorized to execute returns for the years 1973, 1974, and 1975 as joint returns on behalf of both parties to the divorce. Although the decree was duly served on Wilma, she took no action in response to the entering of the decree and did not appeal from it. A certified copy of the divorce decree was mailed to Martens on or about December 21, 1976 and was received by Martens on December 22, 1976. On January 20, 1977, petitioner's counsel, Thomas E. Harrington, mailed a letter to Wilma requesting her to sign and return a statement confirming that the tax return filed for 1974, as well as for two prior years, was in fact intended to be a joint return. Wilma received the letter and enclosure, but made no reply. On June 24, 1977, petitioner filed an amended Federal income tax return for 1974. *228 The amended return is captioned with both petitioner's and Wilma's names and social security numbers. The filing status checked is "married filing jointly" and petitioner signed his name to the return. In the space provided for a spouse's signature, petitioner signed "Wilma O. Shapland by Earl P. Shapland." Petitioner explained his insertion of his wife's signature by stating that she was mentally incapable of signing the return. No item of income, credit or deduction attributable to Wilma appears on the amended return, except that an exemption is claimed for her. Respondent's determination that petitioner's amended return is a separate return which was untimely filed is presumptively correct. Welch v. Helvering,290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure; see Calafato v. Commissioner,42 B.T.A. 881 (1940), affd. per curiam 124 F.2d 187 (3d Cir. 1941). Petitioner must present sufficient evidence to persuade us that this determination is wrong. The absence of one spouse's signature on a return does not *229 conclusively establish that it was intended as a separate, and not a joint, return. Estate of Campbell v. Commissioner,56 T.C. 1 (1971); Hennen v. Commissioner,35 T.C. 747 (1961); Heim v. Commissioner,27 T.C. 270 (1956). Whether married taxpayers intended to file a joint return is the determinative issue, their signatures merely indicating such intent. Stone v. Commissioner,22 T.C. 893 (1954). The record contains no evidence of Wilma's desire to file a joint return. Her consistent pattern of inaction, which may be characterized as opposition to filing a joint return with petitioner, is clear. She refused to sign a joint return and refused to sign a statement confirming such intention. Wilma did not participate in the preparation of the return nor is there any evidence that she even saw the return. Moreover, no items of income, deduction or credit attributable to Wilma in her individual capacity are included in petitioner's 1974 return. See Manton v. Commissioner,11 T.C. 831, 834 (1948). Petitioner would ahve us infer Wilma's intention solely from the divorce decree to which she *230 made no response, but did not appeal. He likens his situation to the petitioner and her husband in Lane v. Commissioner,26 T.C. 405 (1956) in which, he asserts, this Court inferred a spouse's intent to file jointly from their settlement agreement which was incorporated as part of an interlocutory divorce decree. However, in Lane the settlement agreement was not the only evidence bearing on her spouse's intent. There was also testimony from both taxpayer's and her husband's attorneys that her spouse had in fact agreed to sign a joint return. His failure actually to keep two appointments, made with his approval, to sign the return was understandable in light of evidence of his physical handicap and problem with the excessive use of alcohol. Here, there is no evidence to support petitioner's claim that Wilma is mentally incapacitated, nor is there evidence apart from the divorce decree which could be in any way construed to indicate Wilma's intent to file a joint return. Petitioner contends that the order contained in the divorce decree authorizing him to execute a joint return on behalf of himself and Wilma made petitioner Wilma's agent and gave him the authority *231 to sign her name to the joint return. While section 1.6012-1(a)(5), Income Tax Regs., provides: Where one spouse is physically unable by reason of disease or injury to sign a joint return, the other spouse may, with the oral consent of the one who is incapacitated, sign the incapacitated spouse's name in the proper place on the return followed by the words "By * * * Husband (or Wife)," and by the signature of the signing spouse in his own right * * * there is nothing in the record to substantiate either that Wilma was ill or injured or that she had given her oral consent to petitioner's being her agent. Finally, we find that the amended return was not timely filed. Under section 6013(b)(1), [1] a husband and wife who have previously filed separate returns may elect to file a joint return. However, under the limitations of section 6013(b)(2)(C), an election to file a joint return may not be made after a notice of deficiency has been mailed to either spouse. [2]
*232 Petitioner argues that an effective election may be made by means other than the actual filing of a joint return. He asserts that the legislative history of section 6013 indicates that an election is not synonymous with an actual filing of a return. Section 51(g)(3) of the 1939 Internal Revenue Code, the predecessor of portions of section 6013(b)(2), used the term "joint return" where "election" is now used. Under this interpretation, petitioner asserts that he "elected" to file jointly in his statements with Cuffman, Haegle and Martens, in his protest, and in the certified copy of the divorce decree sent to Martens. He also cites Germantown Trust Co. v. Commissioner,309 U.S. 304 (1940), in support of his view. Petitioner is mistaken in all respects. First, the statutory language of section 6013(b)(1) is patent. It requires the actual filing of a joint return not the mere election to file. As this Court stated in Dritz v. Commissioner,T.C. Memo. 1969-175, affd. per curiam 427 F.2d 1176 (5th Cir. 1970): we believe that the election *233 of a joint computation by any other method than the "making of a return," as provided in section 6013 was never intended by Congress, and cannot be permitted. [28 TCM 874, 880, 38 P-H T.C. Memo. par. 69,175, p. 948.] Second, the legislative history of section 6013 does not support petitioner's position. The substantive change to the predecessor of this section was motivated by a desire to allow married couples to file a joint return after having filed separate returns, without first paying the tax as calculated on the separate returns. [3] See H. Rept. 1337, 83d Cong., 2d Sess. 563 (1954). There is nothing in the legislative history of this section which is relevant to petitioner's argument.
*234 Third, in Germantown, the trustees of the taxpayer filed fiduciary returns on Treasury Form 1041, setting forth the gross income, net income, and deductions of the taxpayer. After determining that the trust should be taxed as a corporation, the Commissioner contended that since no corporation income tax return was filed, the statute of limitations had not begun to run. The Court held that the filing of the Form 1041 return was the filing of a return within the meaning of section 275(c), I.R.C. 1939. The Court concluded: It cannot be said that the petitioner, whether treated as a corporation or not, made no return of the tax imposed by the statute.Its return may have been incomplete in that it failed to compute a tax, but this defect falls short of rendering it no return whatever. [309 U.S. at 310] [footnote omitted].
In Germantown, a return was in fact filed. Here, the only return filed before the issuance of petitioner's statutory notice of deficiency was petitioner's separate return which, it has been stipulated, was not intended to be a joint return. Although Cuffman, Haegle, and Martens may have misled petitioner about the necessity of filing *235 a joint return, they lacked the authority to waive the statutory requirements for the filing of an effective joint return. Kirby v. Commissioner,35 T.C. 306, 311 (1960). We hold, therefore, that petitioner's spouse never intended to file a joint return with him, and that, in any event, the amended return executed by petitioner was not timely filed under the limitations of section 6013(b)(2) since it was filed after he received a notice of deficiency under section 6212. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue, unless otherwise indicated. ↩
2. Section 6013(b)(1) provides: SEC. 6013(b). Joint Return After Filing Separate Return.-- (1) In general.--Except as provided in paragraph (2), if an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse under subsection (a) and the time prescribed by law for filing the return for such taxable year has expired, such individual and his spouse may nevertheless make a joint return for such taxable year. A joint return filed by the husband and wife under this subsection shall constitute the return of the husband and wife for such taxable year, and all payments, credits, refunds, or other repayments made or allowed with respect to the separate return of either spouse for such taxable year shall be taken into account in determining the extent to which the tax based upon the joint return has been paid. If a joint return is made under this subsection, any election (other than the election to file a separate return) made by either spouse in his separate return for such taxable year with respect to the treatment of any income deduction, or credit of such spouse shall not be changed in the making of the joint return where such election would have been irrevocable if the joint return had not been made. If a joint return is made under this subsection after the death of either spouse, such return with respect to the decedent can be made only by his executor or administrator. Section 6013(b)(2) provides in part: SEC. 6013(b)(2). Limitations for making of election.--The election provided for in paragraph (1) may not be made-- * * *
(C) after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6213↩; * * *
3. H.Rept. 1337, 83d Cong., 2d Sess. 105 (1954), provided in part: (3) Married taxpayers are to be allowed to file joint returns after having filed separate returns without first paying the tax shown on the separate returns. For example, if the separate return liability were $130 but the joint return liability only $18, a husband and wife could shift from separate to joint returns by paying only the $18. Under present law they would first have to pay the separate return liability of $130 and then claim a refund of $112.↩